IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

IN RE APPLICATION OF THE FEDERAL    *
TRADE COMMISSION FOR AN ORDER
PURSUANT TO 28 U.S.C. § 1782 TO     *
OBTAIN INFORMATION FROM AEGIS
MOBILLE LLC ON BEHALF OF THE        *
COMPETITION BUREAU, CANADA, FOR
USE BY FOREIGN JUDICIAL             *
PROCEEDINGS
                                    *    CASE NO. MJG-13-mc-524


FEDERAL TRADE COMMISSION            *

                 Movant             *

AEGIS MOBILE, LLC                   *

        Third-Party Defendant       *

*       *       *       *       *       *       *       *       *

<u>MEMORANDUM AND ORDER</u>

The Court has before it Third-Party Aegis Mobile, LLC's
Motion to Vacate the January 30, 2014 Order on The FTC's Motion
to Compel [Document 7], a document entitled "Aegis Mobile, LLC's
(1) Opposition to the FTC's Motion to Compel Aegis to Respond to
a Subpoena; and (2) Cross-Motion to Quash that Subpoena or,
Alternatively, to Modify that Subpoena and Enter a Protective
Order [Document 11]" that shall be treated as a "Motion to Quash
the Commissioner's Subpoena," and the materials submitted
relating thereto.  The Court has held a hearing and has had the
benefit of the arguments of counsel.

I.    BACKGROUND

     At times relevant hereto, the Competition Bureau of Canada

(the "Competition Bureau") requested assistance in a Canadian

civil enforcement proceeding against various Canadian wireless

companies alleged to have deceptively advertised certain premium

cellular services in violation of Canadian law.[1]

     During its investigation of the Canadian cellular

companies, the Competition Bureau found that the Canadian

Wireless Telecommunications Association ("CWTA")[2] had contracted

with Aegis Mobile LLC ("Aegis"), a company based in Columbia,

Maryland, to collect and analyze the advertising used to promote

the Canadian cellular companies' digital content – this is the

same advertising that the Competition Bureau alleges is false

and misleading.  The Competition Bureau asked the Federal Trade

Commission ("FTC") to seek documents and testimony from Aegis

regarding its activities on behalf of the Canadian defendants.

     On November 1, 2013, the FTC applied [Document 1] for an ex

parte order appointing an FTC attorney as a commissioner of the

Court for purposes of obtaining documents and information upon

---

[1]    The Competition Bureau is an independent Canadian law
enforcement agency.  The Safe Web Act authorizes the FTC to
assist a foreign law enforcement agency that is investigating,
or engaging in enforcement proceedings against, possible
violations of laws prohibiting fraudulent or deceptive
commercial practices. 15 U.S.C. § 46(j).
[2]    CWTA is one of the defendants in the Canadian proceeding.

the request from the Competition Bureau. The Court issued the
Order November 1, 2013 authorizing the commissioner's subpoena
at issue [Document 2].  Pursuant to the Order, the FTC served a
commissioner's subpoena on Aegis, seeking the production of
certain documents set forth in "Specifications"[3] relating to
CWTA, a customer of Aegis.

        On January 28, 2014, since Aegis had not complied with the
subpoena, the FTC filed its Motion to Compel Compliance
[Document 4].  The motion was granted by Order issued January
30, 2014 [Document 5].  On February 4, 2014, Aegis filed Third-
Party Aegis Mobile, LLC's Motion to Vacate the January 30, 2014
Order on the FTC's Motion to Compel [Document 7].  By Memorandum
and Order issued February 6, 2014 [Document 10], the Court
provided that:

> 2.    Aegis may defer production of said
>       documents in compliance with the
>       subpoena pending further Order
>       following consideration of the issues
>       raised by the instant motion.
>
> 3.    Aegis shall assemble, and prepare for
>       production within two business days
>       after issuance of an Order directing
>       production, all items subject to the
>       subpoena at issue together with any
>       privilege log relating to items as to
>       which privilege is claimed.

Memorandum and Order 2 [Document 10].

---

[3]      See Appendix, attached hereto.

By the instant motions, Aegis seeks to have the Court quash the subpoena or alternately, to modify the subpoena and enter a protective order.

II. <u>STATUTORY FRAMEWORK</u>

Title 15 U.S.C. § 46(j) provides, in pertinent part:

> Upon a written request from a foreign law enforcement agency to provide assistance in accordance with this subsection, if the requesting agency states that it is investigating, or engaging in enforcement proceedings against, possible violations of laws prohibiting fraudulent or deceptive commercial practices, or other practices substantially similar to practices prohibited by any provision of the laws administered by the Commission . . . to provide the assistance described in paragraph (2) without requiring that the conduct identified in the request constitute a violation of the laws of the United States.

15 U.S.C. § 46(j) (West 2006).

There is, however, a limitation:

> The authority granted by this subsection shall not authorize the Commission to take any action or exercise any power with respect to a bank, a savings and loan institution described in section 57a(f)(3) of this title, a Federal credit union described in section 57a(f)(4) of this title, or a common carrier subject to the Act to regulate commerce, except in accordance with the undesignated proviso following the last designated subsection of this section.

. . . .

> <u>Provided</u>, That the exception of "banks, savings and loan institutions described in section 57a(f)(3) of this title, Federal credit unions described in section 57a(f)(4) of this title, and common carriers subject to the Act to regulate commerce" from the Commission's powers defined in subsections (a), (b), and (j) of this section, shall not be construed to limit the Commission's authority to gather and compile information, to investigate, or to require reports or answers from, any person, partnership, or corporation to the extent that such action is necessary to the investigation of any person, partnership, or corporation, group of persons, partnerships, or corporations, or industry which is not engaged or is engaged only incidentally in banking, in business as a savings and loan institution, in business as a Federal credit union, or in business as a common carrier subject to the Act to regulate commerce.

<u>Id.</u>

## III. <u>DISCUSSION</u>

### A.   <u>FTC's Authority</u>

Aegis contends that the FTC has no authority to obtain discovery from it because the "common carrier" exemption described in 15 U.S.C. § 45(a)(2) applies to the instant subpoena.[4]  As such, Aegis contends that the subpoena is void <u>ab</u>

---

[4]    FTC notes that Aegis failed to raise this objection when served with the subpoena, and as such, Aegis has waived this contention.  Regardless of waiver, the contention fails on the merits.

initio.  Aegis also argues that the FTC does not have authority

under 15 U.S.C. § 46(j)(1) because the Canadian proceeding does

not involve an activity that is substantially similar to a

practice that is prohibited by a law administered by the FTC.


      1.   Common Carrier Exemption

The "common carrier" exemption[5] includes "common carriers

subject to the Acts to regulate commerce, air carriers and

foreign air carriers subject to part A of subtitle VII of Title

49." 15 U.S.C. § 45(a)(2).  Aegis asserts that the Canadian

---

[5]    The "common carrier" exemption reads as follows:

> The Commission is hereby empowered and
> directed to prevent persons, partnerships,
> or corporations, except banks, savings and
> loan institutions described in section
> 57a(f)(3) of this title, Federal credit
> unions described in section 57a(f)(4) of
> this title, common carriers subject to the
> Acts to regulate commerce, air carriers and
> foreign air carriers subject to part A of
> subtitle VII of Title 49, and persons,
> partnerships, or corporations insofar as
> they are subject to the Packers and
> Stockyards Act, 1921, as amended [7 U.S.C.A.
> § 181 et seq.], except as provided in
> section 406(b) of said Act [7 U.S.C.A. §
> 227(b) ], from using unfair methods of
> competition in or affecting commerce and
> unfair or deceptive acts or practices in or
> affecting commerce.

15 U.S.C. § 45(a)(2) (West 2006) (emphasis added). The exemption
is also included in § 46 (j)(6).

wireless telecommunications providers, defendants in the
Canadian proceeding, should be considered "common carriers."

However, "'Acts to regulate commerce' means subtitle IV of
Title 49 and the Communications Act of 1934" and any follow-on
legislation. 15 U.S.C. § 44.  An entity is subject to the
Communications Act only if it is "engaged within the United
States" in "interstate and foreign communication by wire or
radio [or] ... interstate and foreign transmission of energy by
radio, which originates and/or is received within the United
States." 47 U.S.C. § 152(a).  See also FTC v. Verity Int'l Ltd.,
443 F.3d 48, 59 (2d Cir. 2006) ("foreign terminating carriers
are not carriers subject to the Communications Act, as
contemplated by the FTC Act's common-carrier exemption").
Therefore, neither Aegis nor any of the Canadian defendants are
"subject to the Acts to regulate commerce" under 47 U.S.C. §
45(a)(2).

Furthermore, the FTC is acting under the authority to
assist a foreign agency that is investigating or enforcing
possible violations of its country's laws that prohibit
fraudulent or deceptive commercial practices.  15 U.S.C. § 46.
This authority exists even if the FTC could not address such
conduct if it occurred in the United States, see id. at § 46
(j)(1).

## 2.   Substantial Similarity Contention

The Safe Web Act, in addition to authorizing the FTC to assist a foreign agency with proceedings against "possible violations of laws prohibiting fraudulent or deceptive commercial practices," also authorizes the FTC to assist a foreign agency with proceedings against "other practices substantially similar to practices prohibited by any provision of the laws administered by the Commission."  15 U.S.C. § 46(j)(1), see also Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 608 (4th Cir. 2009)("Stated in the disjunctive, the statute contemplates two independent avenues . . . .").

In the instant case, the conduct at issue (deceptive advertising and billing) is "substantially similar" to practices prohibited by the FTC Act.  See, e.g., FTC v. Inc21.com, 745 F. Supp. 2d 975, 996 n. 17, 1000-01, 1003-05 (N.D. Cal. 2010)(holding that the practice of placing unauthorized charges on consumers' phone bills was deceptive and unfair in violation of Section 5 of the FTC Act).  Therefore, the alternate prong authorizing FTC action is also satisfied.

Accordingly, the FTC has the authority to obtain discovery in the instant case pursuant to 15 U.S.C. § 46 and 28 U.S.C. § 1782.

B.   Undue Burden

Aegis argues that complying with the subpoena would impose an undue burden upon it, including costs on the order of $504,000 to $1,366,500 with regard to privilege claims.  The argument is misplaced.  Aegis has presented no basis whatsoever to believe that it has any privilege to assert.  It makes a vague and unsupported reference to unknown types of privileges that might be available to its customers under Canadian law.  Even if there were some such privilege, Aegis would have no standing to assert it on behalf of its customer.

Aegis asserts that it is ready to comply with the Court's Order to produce some – but not all – of the responsive documents within two days of a subsequent order.  Aegis has assembled all of its work product and reports that it provided to CWTA, but asserts that there are difficulties in regard to certain materials that it did not provide to CWTA.[6]

The FTC avers that it has taken steps to minimize Aegis's burden, narrowing the scope of requests and offering to reimburse the costs of reasonable copying.  Nevertheless, there is a legitimate question regarding the ease of availability of the advertising captures.  Aegis has explained that retrieving

_____

[6]    These include the collection of data such as actual screenshots of advertising obtained as part of an automated capture process (see Specification 3), Aegis's internal analysis (see Specifications 5 and 6).

some of the data requested would require extensive forensic analysis and, potentially, external assistance to extract, which could be costly.[7]  Aegis also stated that, in the course of its business, it provides its data collection and analysis services to companies and to regulatory authorities for a fee.  Aegis contends that it should be entitled to at least cost reimbursement with regard to this data.

The Court recognizes that there remain issues requiring resolution regarding the subpoena at issue.  Moreover, the Canadian proceeding is in its early phases.  Thus, the Court finds it most efficient and prudent to require immediate production of all documents responsive to Specifications 1, 2, and 4 and defer action with regard to the balance of the documents at issue.  When the FTC receives[8] the documents responsive to Specifications 1, 2 and 4, it[9] can consider – in light of those documents and the circumstances of the Canadian proceedings – modification of the other Specifications, seek agreement with Aegis and, in the absence of agreement, seek an Order regarding such other Specifications.

---

[7]     It appears that FTC's request for the advertising captures goes beyond the scope of what was provided to CWTA and the raw data that was captured is stored in Aegis's data warehouse under an alternate index method that is not easily matched to the CWTA project.

[8]     And provides to the Competition Bureau.

[9]     Together with the Competition Bureau

IV.   <u>CONCLUSION</u>

For the foregoing reasons:

1.   Aegis Mobile, LLC's: (1) Opposition to the FTC's
     Motion to Compel Aegis to Respond to a Subpoena;
     and (2) Cross-Motion to Quash that Subpoena or,
     Alternatively, to Modify that Subpoena and Enter
     a Protective Order [Document 11] is GRANTED IN
     PART and DENIED IN PART.

     a.   Aegis shall produce, within two days of this
          Order, all documents responsive to
          Specifications 1, 2, and 4 of the Subpoena
          (as modified).

     b.   After review of materials supplied, the FTC
          may file a further motion seeking production
          of documents and data responsive to
          Specifications 3, 5, and 6 of the Subpoena.

2.   By October 30, 2014, the parties shall provide a
     joint status report or separate status reports.


SO ORDERED, on <u>Wednesday, July 30, 2014</u>.


                    _____/s/_____
                       Marvin J. Garbis
                  United States District Judge

APPENDIX – SPECIFICATIONS

1.   Produce all agreements between Aegis and the CWTA
     and between Aegis and each Wireless Company
     relating to the Work;

2.   Produce all Documents and Electronically Stored
     Information that describe the nature and scope of
     the Work Aegis performed for the CWTA and each
     Wireless Company, and all policies and procedures
     Aegis relied upon in performing the Work;

3.   Produce all Documents and Electronically Stored
     Information relating to Aegis' actual or proposed
     Work for the CWTA and each Wireless Company;

4.   Produce all Documents and Electronically Stored
     Information containing communications between
     Aegis and the CWTA, between Aegis and each
     Wireless Company, and between Aegis and each
     Content Provider or Aggregator relating to the
     Work;

5.   Produce all memoranda, reports, presentations,
     analyses, appraisals and assessments in which
     Aegis describes, expresses an opinion about, or
     analyses Representations or other marketing
     practices used to promote Digital Content; and

6.   Produce all memoranda, reports, presentations,
     analyses, appraisals and assessments in which
     Aegis describes, expresses an opinion about, or
     analyses how or why customers are charged for the
     purchase of Digital Content that they did not
     authorize, including through practices that are
     commonly known as "stacking" or "cramming"; or
     how marketing practices facilitate charges for
     Digital Content that customers did not authorize.

The Federal Trade Commission's Motion to Compel Compliance with
Subpoena Issued Pursuant to 28 U.S.C. § 1782 [Document 4] App.
5, 8; see also FTC Letter [Document 4-7], which clarifies and
modifies these specifications.